UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Katherine Meyer,

                Plaintiff,

vs.

FCA US LLC f/k/a Chrysler Group
LLC, a Delaware company

                Defendant.

Civil No._____

PRODUCTS LIABILITY

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

---

Plaintiff, Katherine Meyer, as and for her complaint states and alleges as follows:

## INTRODUCTION

1.       Katherine Meyer, on behalf of herself, brings this action against FCA US LLC ("Chrysler"). Plaintiff seeks monetary, declaratory, and equitable relief based on Defendant's negligent design and manufacture of the Active Head Restraint system, which severely injured Ms. Meyer by deploying spontaneously on June 27, 2020. As a result of this causeless deployment, Ms. Meyer has suffered severe, life-altering, and permanent injuries.

## PARTIES

2.       Plaintiff, Katherine Meyer, is domiciled in Saint Augusta, County of Stearns, Minnesota, and was injured in Saint Augusta, County of Stearns, Minnesota.

3.       Defendant, FCA US LLC is a Delaware limited liability company with headquarters in Auburn Hills, Michigan. FCA US LLC engages in systematic and continuous activity within the state of Minnesota by selling its vehicles, directly and through agents, within the State of Minnesota. It is in the business of designing, testing, manufacturing, marketing, selling, and supporting the Dodge Durango line of vehicles, among many others.

**JURISDICTION AND VENUE**

4.      Plaintiff resides in Minnesota and Defendant is incorporated in Delaware and has headquarters in Michigan. The amount of damages greatly exceeds $75,000.00. Under 28 U.S.C. § 1332, this Court has jurisdiction over Plaintiff's claims.

5.      This Court has personal jurisdiction over Chrysler because Chrysler engages in substantial business activities within this District; additionally, Chrysler designed, tested, approved, and manufactured the defective device that caused injury to Plaintiff in this District.

6.      Venue is appropriate in this District under 28 U.S.C. § 1391 because Plaintiff was injured in this District.

**STATEMENT OF THE CLAIM**

*The Defective Active Head Restraint*

7.      Chrysler is one of the country's largest automobile manufacturers. It is directly responsible for the design, testing, manufacture, marketing, advertising, selling, and leasing of hundreds of thousands of automobiles annually. At all relevant times, Chrysler owned the Dodge Chrysler brand of vehicles, which includes the Dodge Durango SUV.

8.      For more than a decade, Chrysler has been designing, manufacturing, advertising, selling, and leasing cars with headrests exhibiting a defect which threatens occupants' safety. Embedded in the headrest is a mechanism, known as an "active head restraint" ("AHR"), which is designed to spring forward upon a rear-end collision and rapidly push the headrest out to catch the occupant's head and prevent whiplash. The headrest and AHR were designed by Chrysler and installed in numerous Chrysler vehicles, including the 2014 Dodge Durango line, manufactured by Chrysler.

9.      Chrysler portrays the Active Head Restraint as "designed to help prevent or

reduce the extent of injuries to the driver and front passenger in certain types of rear impacts."[1] The same manual notes that the AHR may deploy if struck from behind with significant force by cargo or a passenger, and that such deployment could "cause personal injury."[2] However, Chrysler does not warn that the AHR may deploy spontaneously.

10.     All of the AHRs share a common, uniform defect. Under normal conditions, the AHR can deploy spontaneously and forcefully strike the occupant's head. The force of the impact can cause serious bodily harm to the head and neck, and further creates a risk of collision when the headrest deploys—suddenly and without warning—while the vehicle is being driven.

11.     The AHR spontaneously deploys when, under normal operating conditions, a cheap plastic component inside the device fails. The AHR contains a plastic bracket that acts as the triggering mechanism and holds the spring-loaded release in place until a sensor signals a rear-end collision. As a cost-saving measure, Defendant designed this bracket with an inferior and inexpensive form of plastic which cracks and breaks down prematurely under the constant pressure exerted by the springs in the AHR. There is no way for a vehicle driver to predict when the AHR will deploy.

12.     Much like an airbag, the AHR deploys with sufficient force to cause serious injury when it deploys outside of a crash or collision scenario.

13.     Chrysler is and was aware of the risk of spontaneous deployment of the AHR installed in its vehicles.

14.     However, no recall of AHR systems has ever been issued for the spontaneous

---

[1] 2014 Dodge Durango Owner's Manual, 153.
[2] *Id*. at 158.

deployment defect, nor has Chrysler made any effort to warn the public about these ticking time bombs in hundreds of thousands of its vehicles.

### *Katherine Meyer's Injuries and Damages*

15.      Before June 27, 2020, Katherine Meyer was an active member of her family, a special educator and personal care assistant, and dedicated crafter. She was a frequent participant in the social life of her large extended family, who maintain close ties with each other. She attended weddings, holidays, and family gatherings on a regular basis. She found pride and joy from being a part of her family's comings and goings. In addition, Ms. Meyer acted as an in-home caretaker to her aging mother and father and continues to act as an in-home caretaker to her father. Prior to her injury, Ms. Meyer frequently crafted as a hobby to relieve stress and went on three-to-four-mile walks to relieve stress and maintain physical health.

16.      At some point in 2017, Ms. Meyer purchased a 2014 Dodge Durango (VIN# 1C4RDJAG9EC593733) ("Durango"). She used the vehicle on a regular basis.

17.      On June 27, 2020, the AHR in Ms. Meyer's Durango deployed while Ms. Meyer was coming to a stop, striking her with great force on the left side of her upper neck/head because her head was turned. Ms. Meyer was not involved in an accident or collision of any kind. The force of the deployment cause Ms. Meyer severe whiplash and a concussion.



*Figure 1: The deployed AHR in Ms. Meyer's vehicle*

18.     The AHR deployed because of its defective design and manufacture. Specifically, the plastic catch meant to keep the AHR from deploying cracked and broke because it was made of cheap material unsuited to the pressures it was kept under.



*Figure 2: Close-up of the AHR mechanism. The broken catch is circled in red*

19.     The injury caused by the deployment of the AHR has resulted in Ms. Meyer needing to seek extensive medical care at great expense. She has engaged in extensive physical therapy and chiropractic care to try to alleviate the symptoms caused by her injuries, including neck pain, headaches, fatigue, dizziness, vertigo, ophthalmological issues, anxiety, and PTSD. Ms. Meyer will continue to require ongoing medical care for the remainder of her life.

20.     The injury caused by the deployment of the negligently designed and manufactured AHR has resulted in permanent partial disability. Since the injury, Ms. Meyer can no longer act as personal care assistant (for which she made $10,000 to $12,000 every summer) and can only work half-time as a special educator, which has caused her to lose over $13,000 of wages so far, and she will never be able to work full days again.

21.     The injury has caused intense and permanent pain and suffering. Not only does Ms. Meyer suffer direct physical pain, but the pain, fatigue, and anxiety prevent her from fully engaging in activities with her tightknit extended family, who are her primary social group. Her injuries also prevent her from fully engaging with her students, causing further suffering. Finally, her injuries prevent Ms. Meyer from walking more than half a mile at a time and prevent her from being able to craft for more than an hour or two, when she can craft at all. Inability to engage in her hobbies causes intense distress and suffering.

## CAUSES OF ACTION

### COUNT I – Products Strict Liability – Design, Manufacture, and Failure to Warn

22.     Plaintiff realleges and incorporates by reference paragraphs 1 through 21 as though fully set forth herein.

23.     The elements of strict liability in tort in Minnesota are:

a.  Defendant's product must have been in a defective condition unreasonably dangerous to the user;

b.  At the time the product left the defendant's control; and

c.  And that defect must be the proximate cause of plaintiff's injury.

24.     At all relevant times hereto, Defendant was directly or vicariously engaged in the design, development, manufacture, testing, marketing, selling, and leasing of the 2014 Dodge Durango and of the Active Head Restraint system installed within it.

25.     The Durango and AHR, as designed, manufactured, marketed and sold by Defendant, reached Plaintiff without substantial change in condition and were used by Plaintiff in a reasonably foreseeable and intended manner.

26.     The AHR was designed and manufactured to use a plastic catch that is

unsuitable to its intended purpose because it is unable to withstand the pressures within the AHR system, with the consequence that the AHR system will spontaneously deploy, causing injury.

27.     The Durango and AHR were defective and unreasonably dangerous when they entered the stream of commerce and received by Plaintiff, because the defect with the catch causing spontaneous deployment rendered the system and the vehicle in which it was installed dangerous to an extent beyond that which would be contemplated by the ordinary consumer.

28.     At no time did Plaintiff have reason to believe that either was in a condition not suitable for their proper and intended use.

29.     The AHR's design was unreasonably dangerous because it utilized parts not suited to its intended purpose, causing spontaneous deployment.

30.     The AHR's manufacture was unreasonably dangerous because it utilized parts not suited to its intended purpose, causing spontaneous deployment.

31.     The AHR was unreasonably dangerous because it was sold without proper warning of the possibility of spontaneous deployment. Defendant had knowledge and information confirming the defective and unreasonably dangerous condition of the AHR.

32.     On June 27, 2020, the spontaneous deployment of the AHR in Plaintiff's vehicle caused by its defective design and manufacture directly injured Plaintiff, who has sustained and will continue to sustain severe and permanent injury, lost income, permanent disability, other economic loss, and pain and suffering, causing damages in excess of $75,000.

## COUNT II – Negligent Design and Manufacture

33.     Plaintiff realleges and incorporates by reference paragraphs 1 through 32 as though fully set forth herein.

34.     Defendant owed a duty to Plaintiff, as the end user of the Dodge Durango, to design and manufacture the product so as to be reasonably safe for its intended use.

35.     Defendant breached its duty to Plaintiff by designing and manufacturing its Active Head Restraint system to use cheap plastic that is incapable of holding up to the pressure exerted by the spring-loaded safety device, such that it spontaneously deploys.

36.     Defendant's breach of duty caused injury to Plaintiff when, on June 27, 2020, the Active Head Restraint in Plaintiff's vehicle did, in fact, spontaneously deploy and cause serious injury to plaintiff.

37.     Because of said injuries, Plaintiff has sustained and will continue to sustain severe and permanent injury necessitating extensive medical care, lost income, permanent disability, other economic loss, and pain and suffering, causing damages in excess of $75,000.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff, Katherine Meyer, prays for all of the following relief:

1.     Damages in a sum exceeding $75,000 in an amount to be proven at trial;

2.     Reasonable attorney's fees in an amount to be proven after judgment is entered;

3.     All costs and disbursements incurred in this action, including expert witness fees; and

4.     All other relief the Court deems just and proper under the circumstances.

## JURY DEMAND

Plaintiff demands trial by jury as to all triable issues.


Dated: June 14, , 2022

RINKE NOONAN, LTD.


/s/ Tonya Hinkemeyer

Tonya T. Hinkemeyer (#0312113)
Suite 300 US Bank Plaza Building
1015 W. St. Germain St.
P.O. Box 1497
St. Cloud, MN  56302-1497
(320) 251-6700
(320) 656-3500 fax
Email: Thinkemeyer@RinkeNoonan.com

Attorneys for Plaintiff


## ACKNOWLEDGEMENT


Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this Complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the Complaint otherwise complies with the requirement of Rule 11.

Katherine Meyer


10

[29661-0001/4709535/1]